IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EUGENE JAMES ELLIS, | § | |
| TDCJ-CID NO. 753358, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. H-07-2768 |
| NATHANIEL QUARTERMAN, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court are petitioner Eugene James Ellis's Petition for a Writ of Habeas Corpus by a Person in State Custody (Docket Entry No. 1), and Respondent Nathaniel Quarterman's Motion for Summary Judgment with Brief in Support (Docket Entry No. 43). Also pending are Ellis's Motion for Authorization to file a second successive writ (Docket Entry No. 10); Motion to Transfer (Docket Entry No. 18); Motion for Discovery and Inspection (Docket Entry No. 19); Motion to Appoint Counsel (Docket Entry No. 20); Motion of Pleading (Docket Entry No. 27); Motion to Transfer (Docket Entry No. 30); Motion of Pleading (Docket Entry No. 35); Motion for Declaratory Judgment (Docket Entry No. 40); and Motion for Leave to File Writ of Mandamus and Prohibition Rule 52.1 (Docket Entry No. 42). For the reasons stated below, respondent's motion will be

granted, and Ellis's petition will be denied as will all of his other motions.

## I.   <u>Factual and Procedural Background</u>

Petitioner Eugene James Ellis was convicted of aggravated sexual assault in state court on May 10, 1996.[1]  The facts adduced at trial were adequately summarized for present purposes by the Texas Court of Appeals.

> [T]he victim, Loretta Sue Hall, was mentally incompetent and . . . lived at the Yale Village Apartments with her mother and her son.  On her way to the laundry room at the apartment complex, Hall saw [Ellis], a security guard at the apartment complex. While washing her clothes, Hall heard the metal gate to the laundry room close and lock.  Hall testified that someone approached her from behind and threw her on the floor. Hall recognized [Ellis] as her assailant.
>
> Hall testified that [Ellis] "raped" her.  She stated that [Ellis] took off her pants and held her arms by her head.  She also testified that [Ellis] pulled down his pants and put his penis in her "lajonda."  [Ellis] threatened to hurt Hall's mother and Hall's son if she told anyone.  Hall then returned to her apartment and called the apartment manager to report the assault.  The manager told Hall that the incident was between her and [Ellis] and then hung up the phone.
>
> Later, Hall received a call from her Mental Health Mental Retardation Authority (MHMRA) counselor.  Hall told the counselor about the assault, and the counselor called the Women's Center for assistance.  The Women's Center arranged for Hall to go to the hospital and be examined.  Joseph Chew, with the Houston Police Department Crime Laboratory, testified that semen was detected on the vaginal smears and swabs taken from Hall.  Chew also testified that semen was detected on the crotch of

_____

[1]<u>Ex parte Ellis</u>, WR-31,558-02, Judgment on Jury Verdict of Guilty, p. 33.

Hall's pants.  The sample was insufficient to determine the DNA.

Hall testified that she had been sexually assaulted on several occasions.  She had falsely accused a class-mate of sexually assaulting her.  Soon after making that claim, she recanted it.[2]

Ellis appealed his conviction to the Texas Court of Appeals, who affirmed on April 2, 1998.[3]  Ellis did not seek review of his conviction from either the Texas Court of Criminal Appeals or the United States Supreme Court.[4]  Having exhausted direct review, Ellis filed an application for a writ of habeas corpus in state court ("state application -02") on November 4, 1998,[5] which was denied without written order on February 17, 1999.[6]

Ellis then filed a petition for a writ of habeas corpus in federal court ("H-99-978") on March 23, 1999.[7]  However, on

_____

[2]Ellis v. State, No. 11-96-158-CR, slip op. at 2 (Tex. App. -- Eastland).

[3]Id.

[4]Ex parte Ellis, WR-31,558-07, Application for a Writ of Habeas Corpus, p. 3.

[5]Ex parte Ellis, WR-31,558-02, Application for a Writ of Habeas Corpus, p. 2.  The court does not regard the date that a pro se habeas petitioner's state application is deposited into the prison mailing system as the date the application was filed.  See Howland v. Quarterman, 507 F.3d 840, 844-45 (5th Cir. 2007).

[6]Ex parte Ellis, WR-31,558-02, at cover.  Ellis has filed a number of state habeas applications.  For convenience the court will sometimes refer to a petition by the last two numbers.

[7]Federal Pleadings and Orders, Docket Entry No. 26 in 07-cv-2768, Petition for a Writ of Habeas Corpus by a Person in State
(continued...)

January 18, 2000, Ellis moved for voluntary dismissal of his petition so that he could return to state court and exhaust claims concerning alleged defects in the state's indictment.[8]   On March 15, 2000, the court granted Ellis's motion, and in its Memorandum on Dismissal ordered the statute of limitations tolled "providing that Petitioner Ellis file[d] his federal habeas corpus petition, or move[d] to reopen the instant petition, no later than forty-five (45) days after completion of the last of his state court proceedings in this matter."[9]

Ellis exhausted his claims in state application -04, which he filed on May 29, 2001.[10]  That application was denied as successive on January 30, 2002.[11]  Ellis also filed a Motion for a New Trial and DNA Testing ("Motion for DNA Testing") on October 25, 2001, while state application -04 was still pending.  The motion was not finally decided until January 24, 2007.[12]

---

[7](...continued)
Custody, p. 1.  March 23, 1999, is the date that Ellis asserts that he placed his petition in the prison mail system.  See id. at 13.

[8]Id., Motion to Voluntarily Dismiss Petition Without Prejudice, pp. 33-34.

[9]Id., Memorandum on Dismissal ¶ 6, p. 38.

[10]Ex parte Ellis, WR-31,558-04, Application for a Writ of Habeas Corpus, pp. 2, 9.

[11]See id. at cover.

[12]The state trial court did not rule on the motion until May 17, 2005, when the court denied Ellis's motion.  State Court
(continued...)

On July 19, 2005, while his Motion for DNA testing was still pending in state court, Ellis moved to reopen H-99-978 and filed another petition for a writ of habeas corpus, which included the claims for which he had requested dismissal to exhaust, and had exhausted in state application -04.[13]  The court granted Ellis's motion on September 15, 2005, and reopened Ellis's case without "ruling on whether [Ellis] ha[d] met the 45-day time limit imposed in th[e] Court's Memorandum on Dismissal."[14]  The court also ordered Ellis to submit proof that he exhausted all of his claims in state court.[15]  In response to the court's order, Ellis filed a letter stating that all claims and remedies had been exhausted.[16] Accordingly, the court ordered respondent to file a motion for

---

[12](...continued)
Records, Docket Entry No. 14, DNA Motion and Motion for New Trial, No. 9420695, Vol. II pp. 524-25.  Ellis appealed this decision to the Texas Court of Appeals, which affirmed the trial court's decision on August 10, 2006.  Ellis v. State, No. 14-05-00690-CR, slip op. (Tex. App. -- Houston [14th Dist.] Aug. 10, 2006, pet. ref'd).  Ellis filed a petition for discretionary review with the Texas Court of Criminal Appeals, which denied the petition on January 24, 2007.  State Court Records, Docket Entry No. 14, Petition for Discretionary Review, In re Ellis, No. 1726-06, at cover.

[13]Federal Pleadings and Orders, Docket Entry No. 26 in 07-cv-2768, Petition for a Writ of Habeas Corpus by a Person in State Custody, No. H-99-978, pp. 40-50.

[14]Id., Order, pp. 49-50.

[15]Id. at 50.

[16]Id., Letter to the Court, p. 51.

-5-

summary judgment or explain why summary judgment would be inappropriate in Ellis's case.[17]

On January 23, 2006, before respondent could file his motion, Ellis once again moved for voluntary dismissal of his federal petition in H-99-978.[18] Although Ellis did not explain why he again sought dismissal, he attached to his request for dismissal a copy of a letter from the Harris County District Clerk to Ellis that indicated that the state trial court had denied Ellis's retrial motion, which was contained within his Motion for DNA Testing, and that Ellis was appealing that decision.[19] The court granted Ellis's request and dismissed Ellis's petition "without prejudice" on January 26, 2006, but did not toll the statute of limitations.[20]

Ellis filed his petition with this court on August 27, 2007.[21] Respondent filed his Motion to Dismiss Petition with Brief in Support arguing that Ellis's petition should be dismissed because it was time barred under the Antiterrorism and Effective Death

---

[17]_Id._, Order, p. 56.

[18]_Id._, Voluntary Notice to Dismiss Under Rule 23(e) or Rule 61, p. 57.

[19]_Id._ at 58.

[20]Federal Pleadings and Orders, Docket Entry No. 26 in 07-cv-2768, Memorandum on Dismissal, p. 60.  Although initially the court indicated that dismissal was "with prejudice," this appears to have been inadvertent because a subsequent memorandum and a subsequent order both stated that dismissal was "without prejudice," see _id._ at 61-62.

[21]Petition for a Writ of Habeas Corpus by a Person in State Custody, Docket Entry No. 1.

-6-

Penalty Act of 1996 ("AEDPA") (Docket Entry No. 25).  The court denied the motion without prejudice and ordered respondent to file a summary judgment motion addressing whether the AEDPA permitted the claim-by-claim application of the limitation period and addressing petitioner's claims on the merits.[22]

As directed, respondent filed a summary judgment motion addressing the limitation period issue and the merits of petitioner's claim.  Respondent also raised the defense of procedural default.[23]  Petitioner filed a response to respondent's motion, arguing that the AEDPA's limitation period could not be applied on a claim-by-claim basis and rearguing his claims on the merits.[24]

## II.  Standard of Review

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment and applies to habeas corpus cases, see Clark v. Johnson, 202 F.3d 760, 764 (5th Cir. 2000), but only to the extent that the rule is consistent with AEDPA, see Rule 11 of Rules Governing § 2254 Cases.  Summary judgment is proper under Rule 56(c) "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine

---

[22]Memorandum Opinion and Order, Docket Entry No. 41, pp. 7-10.

[23]Respondent's Motion for Summary Judgment with Brief in Support, Docket Entry No. 43.

[24]Petitioner's Motion Opposing Respondent's Motion for Summary Judgment, Docket Entry No. 45.

-7-

issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Although Rule 56 generally requires the court to construe all facts in the light most favorable to the nonmoving party, the AEDPA requires the court to presume that all facts found by the state court are true absent clear and convincing evidence to the contrary. See Woods v. Cockrell, 307 F.3d 353, 356-57 (5th Cir. 2002) (citations omitted); 28 U.S.C. § 2254(e)(1).

### III.  **Application of the AEDPA's Limitation Period**

In his summary judgment motion respondent reasserts his argument that petitioner's petition is time barred under the AEDPA's limitation period.  Petitions filed under the AEDPA are subject to a one-year limitation period.  See 28 U.S.C. § 2244(d)(1). The AEDPA provides that the limitation period is to be calculated from the latest of four dates, see 28 U.S.C. § 2244(d)(1)(A)-(D), only two of which are relevant to this case. Section 2244(d)(1)(A) provides that the one-year limitation period begins running from the date direct review of a petitioner's conviction has been concluded or the time to seek such review has expired.  "Section 2244(d)(1)(D) provides for equitable tolling when the facts on which a federal habeas claim is based would not have been discovered by a duly diligent petitioner." Ybanez v. Johnson, 204 F.3d 645, 646 (5th Cir. 2000).

Ellis argues that his petition is timely under subsection (D). After Ellis's conviction became final, the Texas legislature enacted article 64 of the Texas Code of Criminal Procedure, which provided criminal defendants, such as Ellis, with a right to have all DNA evidence retested under certain circumstances. <u>See, e.g.</u>, Tex. Code Crim. Proc. art. 64.01.   The law became effective April 5, 2001.   <u>See</u> 2001 Tex. Sess. Law Serv. 5 (West).   Ellis filed his motion for retesting on October 25, 2001.[25] After filing his motion, and after the motion had been pending for almost two years, Ellis learned that there were irregularities in the state's DNA testing procedures that may have affected the DNA sample used at trial.[26] The retesting of this sample was completed on March 10, 2005.  The results of the retesting revealed that the DNA sample was a mixture of at least three individuals, and that Ellis could not be excluded as one of those three people.[27]

Ellis argues that this evidence -- that the sample used at trial was tested improperly and that the sample was a mixture of at least three people -- is evidence of his innocence, and could not have been discovered with due diligence until after the proceedings related to his Motion for DNA Testing had concluded.  This process was not completed until January 24, 2007, when the Texas Court of

---

[25]<u>See</u> <u>Ellis v. State</u>, No. 14-05-690, Clerk's Record Vol. II, Motion for DNA Testing, p. 410.

[26]<u>See</u> <u>id.</u>, <u>Brady v. Maryland</u>, Disclosure, p. 455.

[27]<u>Id.</u>, Report, pp. 522-23.

Criminal Appeals denied Ellis's petition for discretionary review.[28]
Thus, liberally construed, Ellis argues that under § 2244(d)(1)(D)
he had one year from the date on which his Motion for DNA Testing
was finally decided (January 24, 2007) to file his federal petition
containing his claim based on that evidence.  Ellis, therefore,
urges the court to conclude that his petition was timely because it
was filed on August 27, 2007.

    Assuming that subsection (D) is applicable as Ellis argues,
its application here is subject to competing dates.  The factual
predicate that Ellis argues he could not have previously discovered
with due diligence (the evidence related to the DNA sample) is the
factual predicate only for Ellis's actual-innocence claim.  The
factual predicate of Ellis's three other claims (his ineffective
assistance, due process, and double-jeopardy claims) was, or should
have been, discoverable at trial.  Accordingly, for purposes of
subsection (D), Ellis's claims are potentially subject to different
dates and, therefore, potentially different limitation periods.
This then raises the question of whether the court is authorized
under the AEDPA to apply a different limitation period to each
claim.

    Although there is no controlling authority in this circuit
settling the issue, other circuit courts have considered this
question and have reached different conclusions.  In Walker v.

_____

    [28]State Court Records, Docket Entry No. 14, Petition for
Discretionary Review, In re Ellis, No. 1726-06, at cover.

Crosby, 341 F.3d 1240 (11th Cir. 2003), the court held that where
a petition raises one timely claim and several time-barred claims,
the timely claim allows for the "resurrection" of the time-barred
claims because § 2244(d)(1) permits only one limitation period to
be applied to a petition, and does not permit the limitation period
to be applied on a claim-by-claim basis.  Id. at 1242-47.  The
court based its decision on its reading of the text of § 2244(d)(1)
and the Supreme Court's interpretation of similar text in other
AEDPA provisions.

        Looking to the text of § 2244(d)(1) the court noted that
"[t]he statute directs the court to look at whether the
'application' is timely, not whether the individual 'claims' within
the application are timely."  341 F.3d at 1243.  Thus, the court
concluded, "[t]he statute provides a single statute of limitations,
with a single filing date, to be applied to the application as a
whole. . . . [and] that this single deadline shall run from the
'latest of' several possible triggering dates contained in
subparagraphs (A) through (D)."  Id.  "[I]ndividual claims within
an application cannot be reviewed separately for timeliness."  Id.
at 1245.

        The court also found guidance and support for its
interpretation of § 2244(d)(1) in Artuz v. Bennett, 121 S. Ct. 361
(2000).  There, the Supreme Court held that a habeas petitioner's
state habeas application is "properly filed" for purposes of
§ 2244(d)(2), and therefore tolls the limitation period, when the

state habeas application complies with all "applicable laws and
rules governing filings," and does not depend on "whether the
<u>claims contained in the application</u> are meritorious and free of
procedural bar." 121 S. Ct. at 364.  In reaching this conclusion
the  Court  sought  to  preserve  the  distinction  between  an
"application" -- the term used in § 2244(d)(2) -- and a "claim."
The Court reasoned that a rule that permitted a court to consider
whether the claims in a state habeas application were free of
procedural bar when determining whether an "application" was
"properly  filed"  would  "elide[]  the  difference  between  an
'application' and a 'claim.'"  <u>Id.</u>  Section 2244(d)(2), the Court
observed, speaks only of applications being "properly filed," not
claims.  <u>Id.</u>  However, as the Court noted, only claims are
procedurally defaulted, not applications.  <u>Id.</u>  Thus, a rule that
would allow courts to consider whether an application was "properly
filed" on a claim-by-claim basis "would require judges to engage in
verbal  gymnastics . . . . [and] say that the application is
'properly filed' <u>as to</u> the nonbarred claims, and not 'properly
filed' <u>as to</u> the rest."  <u>Id.</u>

    Applying this reasoning to the text of § 2244(d)(1), the
Eleventh Circuit in <u>Walker</u> concluded that allowing a court to
"dismiss some claims as untimely and retain jurisdiction over other
timely claims would [similarly] elide the distinction between
applications and claims that exists throughout § 2244" and, more
especially, within § 2244(d)(1).  341 F.3d at 1243-45.  The court

-12-

also concluded that applying one limitation period to all claims
was consistent with Congress's desire to avoid piecemeal litigation
of habeas claims, and to consolidate habeas review into a single
proceeding.  Id. at 1244-1246 & n.5.

In Fielder v. Varner, 379 F.3d 113 (3d Cir. 2004), the Third
Circuit took a different approach.  Openly disagreeing with the
Walker court's interpretation of § 2244(d)(1), the Third Circuit
held that the statute should be interpreted as allowing a claim-by-
claim application of the limitation period.  Id. at 118-22.  In
reaching its decision, the Fielder court examined the text of
§ 2244(d)(1) and concluded that the Walker interpretation read more
into the statute than is written.  Id. at 118.  Section 2244(d)(1),
the Third Circuit reasoned, does not "require[] a court to pick the
latest date when the factual predicate of a claim was reasonably
discoverable[,]" as the Walker court had impliedly concluded.  Id.

> The reference to "the latest" date in § 2244(d)(1) tells
> a court how to choose among the four dates specified in
> subsections (A) through (D) once those dates are
> identified.  This language does not tell a court how to
> identify the date specified in subsection (D) in a case
> in which an application contains multiple claims.
> Accordingly, there is nothing in § 2244(d) that suggests
> that a court should . . . select the latest date on which
> the factual predicate of any claim presented in a multi-
> claim application could have reasonably been discovered.
> It would be just as consistent to pick the earliest date.

Id.  Accordingly, Fielder found the text of § 2244(d)(1) ambiguous
as applied to multi-claim applications.  To determine how Congress
intended courts to apply § 2244(d)(1) to multi-claim applications,

-13-

the court concluded that it must "look beyond the words of the statute." Id.

The court then examined how statutes of limitation are commonly applied, citing several federal and state statutes of limitation that, while speaking broadly of "actions" and not of "claims," are routinely applied on a claim-by-claim basis. Id. at 119 (citing, among others, 28 U.S.C. § 1658). The Fielder court also looked to Congress's intent in enacting § 2244(d)(1), and concluded that it was "confident" that, when Congress enacted § 2244(d)(1), it did not intend to produce the result reached in Walker. Id. at 120.

This court agrees with Fielder that the text and structure of § 2244(d)(1) are ambiguous as applied to multi-claim applications and that the best way to achieve the purposes that Congress intended § 2244(d)(1) to serve is to adopt a claim-by-claim approach. Several reasons, in addition to those stated in Fielder, inform the court's conclusion.

First, even if the Walker court was correct in its conclusion that the plain language of § 2244(d)(1) supports its interpretation, a plain-language interpretation should not be adopted when such an interpretation would reach a result that Congress clearly did not intend. See United States v. Scrimgeour, 636 F.2d 1019, 1022-23 (5th Cir. 1981) ("A statute should ordinarily be interpreted according to its plain language, unless

-14-

a clear contrary legislative intention is shown."). Congress's general purpose in enacting the AEDPA as a whole was "'to further the principles of comity, finality, and federalism.'" <u>Caldwell v. Dretke</u>, 429 F.3d 521, 528 (5th Cir. 2005) (quoting <u>Williams v. Taylor</u>, 120 S. Ct. 1479, 1490 (2000)); <u>see also id.</u> ("Congress's stated legislative intent in enacting AEDPA . . . . was to 'curb the abuse of the statutory writ of habeas corpus,' and 'address problems of unnecessary delay.'" (quoting H.R. Conf. Rep. No. 104-518, at 111 (1996), U.S. Code Cong. & Admin. News 1996 at pp. 924, 944)). This purpose is apparent in many of the AEDPA's other provisions,[29] including § 2244(d)(1), which was specifically enacted to "'reduce[] the potential for delay on the road to finality by restricting the time that a prospective federal habeas petitioner has . . . to seek federal habeas review.'" <u>Id.</u> (quoting <u>Duncan v. Walker</u>, 121 S. Ct. 2120, 2128 (2001)). An interpretation that resurrects otherwise dead claims merely because they are among the living, as the <u>Walker</u> interpretation candidly allows, <u>see</u> 341 F.3d at 1247, hardly seems consistent with the purposes that Congress intended § 2244(d)(1), and the AEDPA generally, to serve.

The <u>Fielder</u> court's interpretation is also supported by the Supreme Court's recent decision in <u>Pace v. Diguglielmo</u>, 125 S. Ct.

---

[29]<u>See, e.g.</u>, 28 U.S.C. § 2244(b) (requiring courts to dismiss second or successive petitions except under narrow and extraordinary circumstances); § 2254(b) (prohibiting federal courts from reviewing unexhausted claims); § 2254(d) (establishing deferential review standards for petitions from state prisoners).

1807 (2005).   The issue in <u>Pace</u> was whether a state habeas application that is filed outside a state's limitations period is "properly filed" for purposes of tolling the AEDPA's limitation period under § 2244(d)(2).  <u>Id.</u> at 1811.  The habeas petitioner in <u>Pace</u> argued that like the procedural bar at issue in <u>Artuz</u>, the state's limitation period did not apply to habeas "applications" as a whole, only to claims (i.e., on a claim-by-claim basis).  <u>See</u> 125 S. Ct. at 1813.  The petitioner therefore "argue[d] that, because § 2244(d)(2) refers to a 'properly filed application,' then any condition that must be applied on a claim-by-claim basis, such as [the state's] time limit, cannot be a 'condition to filing'" under <u>Artuz</u>.  <u>Id.</u> at 1813.  The Court rejected this argument, however, because various provisions within § 2244 made it clear that filing requirements can, consistent with <u>Artuz</u>, apply on a claim-by-claim basis.

> Section 2244(b)(3)(C), for example, states that the court of appeals "may authorize the filing of a second or successive <u>application</u> only if . . . the <u>application</u> satisfies the requirements of this subsection."  Yet the "requirements" of the subsection are not applicable to the application as a whole; instead, they require inquiry into specific "claim[s]."

<u>Id.</u> (citing § 2244(b)(2)(A)-(B)).  Section 2244(d)(1), the Court further observed, is applied in a similar fashion:

> [Section] 2244(d)(1) provides that a "1-year period of limitation shall apply to an <u>application</u> for a writ of habeas corpus."  The subsection then provides one means of calculating the limitation with regard to the "application" as a whole, § 2244(d)(1)(A) (date of final judgment), but three others that <u>require claim-by-claim</u>

-16-

<u>consideration</u>, § 2244(d)(1)(B) (governmental inter-
ference); § 2244(d)(1)(C) (new right made retroactive);
and § 2244(d)(1)(D) (new factual predicate).

<u>Id.</u> at 1813 n.6 (second emphasis added).  The Court held that a
state application for habeas corpus filed outside the state's
established time limits is not a "properly filed application" for
purposes of § 2244(d)(2), and, thus, would not toll the AEDPA's
limitation period.  <u>Id.</u> at 1814.

    Although the Court's holding in <u>Pace</u> does not directly impact
the disposition of Ellis's claims, the Court's discussion of
§ 2244(d)(1) is instructive in considering how the statute should
be applied to multi-claim applications such as Ellis's.  Applying
the claim-by-claim approach adopted in <u>Fielder</u>, and endorsed by
<u>Pace</u>, the court concludes that at least three of Ellis's four
claims are barred under § 2244(d)(1).  Because these three claims
are based on facts that Ellis could have discovered at trial,
subsection (A), rather than subsection (D), applies.  The
limitation period for these claims began running on May 2, 1998,
the date Ellis's conviction became final.[30]

    The limitation period ran from that date until November 4,
1998, when Ellis filed state application -02,[31] which respondent

---

    [30]Ellis was convicted on May 10, 1996, and his conviction was
affirmed on April 2, 1998.  Under Texas law Ellis had thirty days
to file a petition for discretionary review, <u>see</u> Tex. R. App. P.
68.2(a), which he did not do.  Therefore, his conviction became
final May 2, 1998, thirty days after the period for seeking a
petition for discretionary review expired.

    [31]<u>Ex parte Ellis</u>, WR-31,558-02, Application for Writ of Habeas
Corpus, p. 2.

agrees tolled the limitations period under § 2244(d)(2).[32]  When the state habeas court denied state application -02 on February 17, 1999,[33] the limitation period began running again.  Given the amount of time that elapsed between the date his conviction became final (May 2, 1998) and the date he filed state application -02 (November 4, 1998), Ellis had 179 days to file his federal petition for a writ of habeas corpus.

Although Ellis filed his federal petition in H-99-978 on March 23, 1999,[34] the filing of that petition did not toll the limitations period.  See Duncan v. Walker, 121 S. Ct. 2120, 2124 (2001) ("[A] properly filed federal habeas petition does not toll the limitation period.").  The limitation period expired on August 15, 1999, while H-99-978 was still pending.

Neither the Memorandum of Dismissal in H-99-978 nor Ellis's Motion for DNA Testing changes this result.  In H-99-978 the court tolled an already expired limitation period to be fair to Ellis and to allow him to exhaust his claims concerning the alleged defects in the indictment.[35]  Had the court granted Ellis's request and dismissed his petition without tolling the limitation period, any

---

[32]Respondent's Motion for Summary Judgment with Brief in Support, Docket Entry No. 43, p. 22.

[33]Ex parte Ellis, WR-31,558-02, at cover.

[34]See Federal Pleadings and Orders, Docket Entry No. 26 in 07-cv-2768, Petition for a Writ of Habeas Corpus by a Person in State Custody, p. 13.

[35]Id., Memorandum on Dismissal ¶ 6, p. 38.

subsequent attempt by Ellis to raise the newly exhausted claims in federal court would have been barred because the limitation period had already expired while H-99-978 was pending.  Accordingly, the court gave Ellis forty-five days from the completion of the state court proceedings exhausting Ellis's claims to either file another petition or reopen H-99-978.[36]

Ellis's claims concerning the indictment were exhausted on January 30, 2002, the date the state habeas court denied state application -04.[37]  Thus, under the court's Memorandum on Dismissal, Ellis had forty-five days from January 30, 2002, to either move to reopen H-99-978 or file another federal petition.  When Ellis moved to reopen H-99-978 on July 19, 2005,[38] more than forty-five days had elapsed since the "completion of the last of Ellis's state court proceedings in th[e] matter."[39]  Because of this delay, and the fact that the court in H-99-978 did not toll the limitations period when it dismissed Ellis's petition for a second time on January 26, 2006,[40] Ellis's petition was untimely when he filed it on August 27, 2007.

---

[36]Id.

[37]See Ex parte Ellis, WR-31,558-04, at cover; Application for a Writ of Habeas Corpus, pp. 2, 9.

[38]See Federal Pleadings and Orders, Docket Entry No. 26 in 07-cv-2768, Petition for a Writ of Habeas Corpus by a Person in State Custody, No. H-99-978, p. 48.

[39]Id., Memorandum on Dismissal ¶ 6, p. 38.

[40]See id., Order of Dismissal, p. 62.

Moreover, although a properly filed motion for DNA testing can toll the AEPDA's limitation period under § 2244(d)(2), <u>Hutson v. Quarterman</u>, 508 F.3d 236, 239-40 (5th Cir. 2007), such a motion will not toll a limitation period that has already expired, <u>Scott v. Johnson</u>, 227 F.3d 260, 263 (5th Cir. 2000).   Ellis filed his Motion for DNA testing on October 25, 2001.   But, as already explained, the limitation period had expired on August 15, 1999. Thus, for purposes of § 2244(d)(2), Ellis's Motion for DNA Testing could not toll the limitation period as to the three claims based on facts arising at trial.[41]

Finally, there is no basis in the record to support equitable tolling of the limitation period.   Equitable tolling is appropriate

---

[41]The court recognizes that Ellis's Motion for DNA Testing was filed during the time that the limitation period in H-99-978 was tolled.   This fact does not, however, affect the court's conclusion that Ellis's Motion for DNA Testing did not toll the limitation period.   As noted above, after the limitation period expired on August 15, 1999 (179 days after state application -02 was denied), the court in H-99-978 dismissed Ellis's petition (as he had requested) and tolled the limitation period for one narrow purpose: to allow Ellis to exhaust his claims regarding the alleged defects in the indictment.   The limitation period would be tolled, however, for only "forty-five (45) days after the <u>completion</u> of the last of his state court proceedings in <u>this matter</u>," i.e., the exhaustion of the unexhausted indictment claims.   See Federal Pleadings and Orders, Docket Entry No. 26 in 07-cv-2768, Memorandum on Dismissal ¶ 6, p. 38 (emphasis added).   Thus, although it was filed while the limitation period in H-99-978 was tolled, Ellis's Motion for DNA Testing was not included within the scope of the court's order. Because Ellis's Motion for DNA Testing was beyond the scope of the court's order in H-99-978, and because the limitation period had already expired before the motion was filed, Ellis's motion could not, under <u>Scott</u>, further toll the already expired limitation period.

only under "rare and exceptional circumstances," and only when the petitioner has diligently pursued his rights. <u>Larry v. Dretke</u>, 361 F.3d 890, 897 (5th Cir. 2004) (citations and internal quotation marks omitted).  No rare or exceptional circumstances are apparent in the record.  Furthermore, based on the court's review of the record, it is apparent that Ellis did not diligently pursue his rights:  Ellis's first federal petition was dismissed on March 15, 2000,[42] but Ellis waited to file his state application exhausting his claims until May 29, 2001;[43] and, although that state application was denied on January 30, 2002,[44] Ellis waited until July 19, 2005, more than three years, to reopen H-99-978.[45] Therefore, Ellis's three claims are time barred under § 2244(d)(1)(A).[46]

As for Ellis's actual-innocence claim (his only remaining claim), the court notes that although the claim may also be time

---

[42]<u>Ex parte Ellis</u>, WR-31,558-04, Application for a Writ of Habeas Corpus, pp. 2, 9.

[43]Federal Pleadings and Orders, Docket Entry No. 26 in 07-cv-2768, Memorandum on Dismissal, p. 38.

[44]<u>Ex parte Ellis</u>, WR-31,558-04, at cover.

[45]See Federal Pleadings and Orders, Docket Entry No. 26 in 07-cv-2768, Petition for a Writ of Habeas Corpus by a Person in State Custody, No. H-99-978, p. 48.

[46]Given the court's conclusion that equitable tolling is not warranted in this case, the court need not address respondent's argument as to whether recent Supreme Court decisions in cases such as <u>Bowles v. Russell</u>, 127 S. Ct. 2360 (2007), have unsettled the Fifth Circuit's prior holdings that the AEDPA is subject to equitable tolling.

barred, such a determination need not be made.  Even if timely, Ellis's claim of actual innocence is not cognizable on federal habeas review.  Herrera v. Collins, 113 S. Ct. 853, 860 (1992); Lucas v. Johnson, 132 F.3d 1069, 1074-75 (5th Cir. 1998). Therefore, Ellis's actual-innocence claim, along with the rest of Ellis's petition, will be dismissed.[47]

-------

[47]The court also agrees with respondent's alternative arguments that Ellis cannot prevail on his claims because they are either procedurally defaulted or meritless.  Ellis failed to raise his due process, double-jeopardy, and ineffective-assistance-of-counsel claims in state application -02.  See Ex parte Ellis, WR-31,558-02, Application for a Writ of Habeas Corpus, p. 8.  Accordingly, when Ellis tried to raise these claims in subsequent state applications, see Ex parte Ellis, WR-31,558-04, Application for Writ of Habeas Corpus, pp. 9-10, the state habeas court refused to consider them, citing the abuse of the writ doctrine as codified in Texas Code of Criminal Procedure art. 11.07, § 4.  See id. at cover.  When, as here, a state habeas court applies the abuse of the writ doctrine to claims raised in a state habeas application, a federal court is precluded from considering those claims on federal habeas review. See Nobles v. Johnson, 127 F.3d 409, 423 (5th Cir. 1997).

Moreover, there is no merit to Ellis's individual claims.  As the court has already concluded, Ellis's actual-innocence claim is not cognizable on federal habeas review.  Likewise, Ellis has not established a cognizable due process violation based on the alleged defects in the indictment because he has not shown that the indictment was "so fatally defective that it deprive[d] the convicting court of jurisdiction."  Riley v. Cockrell, 339 F.3d 308, 313-14 (5th Cir. 2003).  Nor has Ellis stated a double-jeopardy claim:  Although Ellis was retried after his first trial ended in a hung jury (see Clerk's Record, No. 11-96-158-CR, Order -- Hung Jury, p. 87), Ellis's retrial did not violate his right against double jeopardy -- "The Double Jeopardy Clause does not bar a second trial when the first trial ended with a hung jury." United States v. Williams, 449 F.3d 635, 644 n.14 (5th Cir. 2006). Finally, Ellis has failed to establish that his counsel's purported failure to object to the admission of his prior convictions during the punishment phase of his trial was deficient under Strickland v. Washington, 104 S. Ct. 2052 (1984).  The state was permitted by statute to offer evidence of Ellis's prior convictions during the
(continued...)

## IV.  <u>Conclusion and Order</u>

Because petitioner's claims are time barred, procedurally defaulted, and lacking in merit, Respondent's Motion for Summary Judgment with Brief in Support (Docket Entry No. 43) is **GRANTED**, and petitioner's Petition for a Writ of Habeas Corpus by a Person in State Custody (Docket Entry No. 1) is **DENIED**.  Ellis also filed his Motion for Authorization to file a second successive writ (Docket Entry No. 10), Motion to Transfer (Docket Entry No. 18), Motion for Discovery and Inspection (Docket Entry No. 19), Motion to Appoint Counsel (Docket Entry No. 20), Motion of Pleading (Docket Entry No. 27), Motion to Transfer (Docket Entry No. 30), Motion of Pleading (Docket Entry No. 35), Motion for Declaratory Judgment (Docket Entry No. 40), and Motion for Leave to File Writ of Mandamus and Prohibition Rule 52.1 (Docket Entry No. 42).  These motions are **DENIED** because none of them have any merit.

**SIGNED** at Houston, Texas, on this the 30th day of July, 2008.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[47](...continued)
punishment phase.  <u>See</u> Tex. Code. Crim. Proc. Ann. art. 37.07, § 3(a) (Vernon 1996) (amended 2007).  Counsel's decision not to object to admissible evidence was not deficient.